IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **Philip J. Charvat,** | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Case No. 2:06-cv-983 |
| | : | |
| **GVN Michigan, Inc.,** *et al.*, | : | **JUDGE ALGENON L. MARBLEY** |
| | : | **Magistrate Judge Norah McCann King** |
| Defendants. | : | |

**OPINION AND ORDER**

**I. INTRODUCTION**

This matter comes before the Court on Defendant's Motion for Partial Summary Judgment. Plaintiff Philip Charvat brings this action against Defendants GVN Michigan Inc. ("GVN" or "Defendant") and three other unknown entities alleging that they engaged in unlawful telemarketing practices when placing ten calls to Charvat's residence. During these ten calls, Charvat alleges that GVN committed 187 violations of federal and state statutes, including the Telephone Consumer Protection Act ("TCPA"), the Ohio Consumer Sales Practices Act ("CSPA"), and the Ohio Telephone Sales Solicitations Act ("TSSA"). Charvat seeks the maximum amount of statutory damages for each individual violation, as well as injunctive relief.

For the purposes of this Motion, GVN does not dispute that it violated these statutes, but instead it asserts that Charvat cannot collect damages for violations that occurred during its first call to Charvat, and that all other statutory damages should be calculated on a *per-call* basis, rather than *per-violation*. For the reasons stated below, the Court **GRANTS** Defendant's Motion

for Partial Summary Judgment. Because granting this Motion reduces the amount in controversy below the requirement for diversity jurisdiction under 28 U.S.C. § 1332, this case is **DISMISSED** for lack of jurisdiction.

## II.  BACKGROUND

To understand the issues facing the Court in this Motion, it is unnecessary to recount the details of each of the ten calls. The Motion for Partial Summary Judgement does not hinge on the content of each call, but instead on the sheer number of calls and violations, which are not in dispute here. The Court, therefore, only provides an overview of the ten telemarketing calls that form the basis of Plaintiff's complaint.

On May 28, 2005, an agent of GVN placed its first telemarketing call to Charvat's residence (the "First Call"), soliciting the Plaintiff to attend a sales presentation in which he would be invited to purchase travel and vacation services from GVN. As has been his practice for several years, Plaintiff recorded the call and later prepared a transcript from the recording. At the conclusion of the First Call, Plaintiff demanded that the caller not call him again, and the agent responded that he would take Charvat "off the list." Despite this confirmation, GVN placed nine more telemarketing calls to Charvat's residence, all of which Plaintiff recorded. In three of these calls, Charvat did not actually speak with anyone, as the agent immediately hung up when Charvat answered the phone. In the six other calls, however, Charvat demanded again that his name and telephone number be placed on the Defendant's Do-Not-Call List, and he asked that the agent send him a copy of GVN's Do-Not-Call Policy. After the tenth call, on September 14, 2006, GVN ceased calling Charvat's residence.

For each of GVN's ten calls, Charvat makes numerous factual allegations of GVN's

unlawful behavior that transpired during the call, including, among others, GVN's failure to: (1) provide voluntarily the caller's telephone number; (2) record Plaintiff's name and number on its Do-Not-Call List; (3) train its representatives in the maintenance and use of its Do-Not-Call List; (4) maintain a record of Plaintiff's demand to be placed on the Do-Not-Call List; (5) state, at the beginning of the call, that the purpose of the call was to make a sale; and (6) obtain a certificate of registration form the Ohio Attorney General before acting as a telephone solicitor. Based on these alleged violations, Charvat brings 187 causes of action against Defendants GVN and three other unknown entities for violations of the TCPA, CSPA, and TSSA. In response, GVN has moved for Partial Summary Judgment.

### III.  STANDARD OF REVIEW

Summary judgment is appropriate "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©.  The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the non-moving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388-89 (6th Cir. 1993).  In response, the non-moving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993) (citations omitted).

In evaluating a Motion for Summary Judgment, the evidence must be viewed in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

U.S. 574, 587 (1986). The Court must interpret all reasonable inferences in the non-movant's favor. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The existence of a mere scintilla of evidence in support of the non-moving party's position, however, will not be sufficient; there must be evidence from which the jury reasonably could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986); *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995); *see also Matsushita*, 475 U.S. at 587 (finding summary judgment appropriate when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party").

## IV. LAW AND ANALYSIS

### A. Federal and State Telemarketing Protection Statutes

Charvat's claims stem from a series of state and federal statutes aimed to protect consumers from unwanted telephone sales solicitations. In 1991, Congress enacted the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, "to protect the privacy rights of citizens by restricting the use of the telephone network for unsolicited advertising." *Worsham v. Nationwide Ins. Co.*, 772 A.2d 868, 872 (Md. Ct. Spec. App. 2001). Pursuant to the TCPA, the Federal Communications Commission ("FCC") promulgated regulations designed to balance the privacy concerns of consumers against the continued viability of the telemarketing industry, including 47 C.F.R.§ 64.1200 ("TCPA Regulations") and the Telephone Solicitation Sales Act, R.C. § 4719, *et. seq.* ("TSSA"). *Id.* At 872-73. Among these FCC regulations are specific protocols and procedures that telemarketers must follow. For example, the FCC requires telephone solicitors to establish "procedures for maintaining a list of persons who do not wish to receive telephone solicitations" by that entity, 47 C.F.R. § 64.1200(e)(2), and requires that a

person or entity making a telephone solicitation "provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is made, and a telephone number or address at which the person or entity may be contacted." *Id*.

Interestingly, the TCPA created a private right of action in *state* court to redress violations of the TCPA, rather than granting federal courts federal question jurisdiction. 47 U.S.C. § 227(b)(3); *Compoli v. AVT Corp.,* 116 F. Supp. 2d 926, 928 (N.D. Ohio 2000) (declining to extend federal question jurisdiction over TCPA claims and noting that at least six Federal Circuits have held that there is no private cause of action in federal court under the TCPA); *Dun-Rite Construction, Inc.,* No. 04-3216, 2004 U.S. App. LEXIS 28047, at *5 (6th Cir. Dec. 16, 2004) (noting that the lack of federal question jurisdiction over TCPA claims is "well-settled").  Thus, consumers can collect either actual or statutory damages for violation of the TCPA according to the statute's common law developed in their state. 47 U.S.C. § 227(c)(5).  As this case arises under diversity jurisdiction, so too must this Court look to controlling state law for guidance in adjudicating these claims. *Gottlieb v. Carnival Corp.,* 436 F.3d 335, 341 (2d Cir. 2006) (holding that federal courts can maintain diversity jurisdiction of TCPA claims); *US Fax Law Ctr., Inc. v. Ihire, Inc.*, 476 F.3d 1112, 1117 (10th Cir. 2007).

The TCPA does not pre-empt states from imposing and enforcing intrastate requirements for telephone solicitations, 47 U.S.C. § 227(e)(1)(d), and therefore, the Ohio Consumer Sales Practices Act, O.R.C. § 1345.02(A) also provides protection from telemarketing.  Neither party disputes that plaintiffs can collect for violations of both the TCPA and CSPA.  *Couto v. Gibson, Inc.,* No. 1475, 1992 Ohio App. LEXIS 756 (Ohio Ct. App. Feb. 26, 1992) (noting that under O.R.C. § 1345.13, remedies provided by the CPRA "are explicitly in addition to remedies

otherwise available for the same conduct under state or federal law.").

Charvat alleges that GVN violated the TCPA, CSPA, and their respective regulations 187 times during the ten calls GVN made to Charvat's residence. He requests the maximum amount of statutory damages for each individual violation. In moving for Partial Summary Judgment, GVN does not dispute the existence of such violations, but instead asserts two arguments: (1) that Charvat cannot recover damages pursuant to the First Call, and (2) that Charvat can only recover statutory damages once per-call, rather than for every separate violation.[1] The Court finds GVN's arguments persuasive and, therefore, **GRANTS** Defendant's Motion.

### 1. First Call Violations

Charvat is not entitled to damages based on violations arising out of the First Call. TCPA § 227(c)(5) only provides a private right of action for a person who has received more than one telephone call in violation of the TCPA Regulations within a 12-month period:

> A person who has received *more than one telephone call* within any 12 month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may . . . . [bring an action] to receive up to $500 in damages for each such violation . . . . (Emphasis added).

Given that Congress did not provide a private right of action for the initial telemarketing call, GVN argues that Charvat should not be able to recover damages based on the First Call.

Charvat, however, argues that once a second call is made in violation of a previous do-not-call request, the solicitor can then be held liable for any and all violations that occurred during either the first or subsequent calls. In support of this position, Charvat relies on the language of 47 U.S.C. § 227(c)(5)(B), which provides that a plaintiff can recover damages for

---

[1] GVN initially argued that it is exempt from complying with the requirements of the TSSA because it qualifies for the § 4719.01(B)(18) exemption. However, GVN voluntarily withdrew this portion of its Motion for Partial for Summary Judgment.

"each such violation" of the TCPA Regulations. 47 U.S.C. § 227(c)(5)(B). This phrase, Charvat contends, indicates that there is a remedy that effectively "relates back" to any and all violations of TCPA regulations that might have occurred during the first telephone solicitation, notwithstanding the fact that there is no private right of action for the initial call.

Despite any ambiguity in the language of the statute, Charvat should know well that courts in Ohio have refused to accept this reading of the § 227(c)(5) because he has lost this exact argument in two prior telemarketing actions. In *Charvat v. ATW*, the Ohio Court of Appeals agreed with the trial court that Charvat could not "recover for violations prior to the second call." 712 N.E. 2d 805, 807 (Ohio Ct. App. 1998). After analyzing the language of § 227(c)(5), the court concluded that "[t]he purpose of this portion of the statute is to prevent repeated telemarketing calls to someone who has told the telemarketer not to call." *Id.* Because Congress explicitly stated that no private right of action accrues with the first call, the court reasoned that "[t]he intent of the statute is not to create liability beginning with the first call" *Id.* Instead, the TCPA "regulations assume that a person has made a do-not-call request in a prior call" and punishes them for rebuking this request. *Id.* at 808.

Charvat again failed on this argument just a few months later in *Charvat v. Colorado Prime, Inc.*, which adopted the reasoning of *ATW*. No. 97APG09-1277, 1998 WL 634922 (Ohio Ct. App. Sept. 17, 1998). In fact, this Court has found no precedent, and Plaintiff cites none, that a plaintiff can receive damages based on violations during the first call. *See also Worsham*, 772 A.2d at 876.

Consistent with this authority, the Court finds Charvat's argument unpersuasive. The Court is unwilling to look at the statutory language out of context, as the Charvat requests, and

divorce the private right of action from the remedy. Though the statute reads that one can recover for "each such violation," the TCPA does not even allow a plaintiff to bring an action for first call violations. 47 U.S. § 227(c)(5). Thus, it is unreasonable to assume that Congress meant for liability to accrue with the first solicitation. Accordingly, the Court dismisses all of Plaintiffs' claims for violations during the First Call (Causes of Action #1-12 in the Complaint).[2]

### 2. Calculating Statutory Damages For Multiple Violations Per-call

### I. TCPA

The parties also dispute the proper method for calculating statutory damages under § 227(c)(5) of the TCPA. Charvat seeks statutory damages on a *per-violation* basis. That is, for each technical violation of the TCPA alleged to have occurred within each alleged telephone call that he received by or on behalf of GVN. He alleges between four and eight TCPA violations per-call, and that he should receive $1500 (treble statutory damages) for each violation. GVN contends that Charvat is only entitled to seek recovery for one statutory damage penalty *per-telephone call*.

As with the First Call issue, the Ohio Court of Appeals has already ruled against Charvat on this same damages argument. In *Colorado Prime*, Charvat argued that he was entitled to statutory damages for each violation because § 227(c)(5) states that he can recover for "each such violation." 1998 WL 634922, at *5. The Court, however, found that the language in the statute was ambiguous, as "such" could refer back either to the phrase "telephone call within any 12-month period"(damages *per-call*) or to the preposition phrase "in violation of the regulations"

---

[2] Plaintiff concedes that the Court's analysis with respect to the TCPA claims also governs the CSPA claims with respect to liability for the First Call. Because Plaintiff has no cause of action for damages under the TCPA for violations during the First Call, Plaintiff cannot recover for matching CSPA violations in connection with the First Call.

-8-

(damages *per-violation*). *Id.* Because the last antecedent rule could not resolve this ambiguity, the *Colorado Prime* Court looked to the intent of the statute and, as did the court in *ATW*, noted that the purpose of § 227(c)(5) is to prevent repeated unwanted telephone calls. *Id.* Since the TCPA regulations exist to prevent repeat telephone calls in violation of the statute, the court interpreted the statutory language to authorize statutory damages only once per-call. *Id.* Many other courts, both in and out of Ohio, have also concluded that damages should be calculated on a per-call basis. *See, e.g. Ryan*, 858 N.E. 2d at 852-53 (distinguishing TCPA § 227(c)(5) which should calculate damages per-call, from TCPA § 227(b)(3), which should calculate damages per-violation given the different statutory language and legislative purpose); *Worsham*, 772 A.2d at 876 n.5.

Charvat contends that the Ohio Court of Appeals, in *Adamo v. AT&T*, unanimously ruled that the plaintiff could recover damages for each individual violation of the TCPA and its applicable regulations. No. 79002, 2001 Ohio App. LEXIS 4989 (Ohio Ct. App., Nov. 8, 2001). Charvat, however, misreads *Adamo*, as it does not even address the issue of calculating damages on a per-call or per-violation basis. *Id.* In *Adamo*, the court found that "the TCPA provides for a recovery of a violation of the regulations prescribed under the applicable subsection," as Charvat underlines and notes in bold. *Id.* at *7. But finding that a plaintiff can recover for a violation of the regulations does not mean that one can recover for multiple violations per-telephone call; it merely notes that the regulations, not just the statute, can give rise to damages. *Id.* This Court has found no precedent, and Plaintiff cites none, showing that TCPA damages under § 227(c)(5) should be calculated on a per-violation basis.

Despite this lack of precedent, Charvat further argues that he should be able to recover

damages for each violation because "[i]f a plaintiff were unable to recover for each violation of the TCPA that occurred in a call, then the telemarketer would be free to commit as many violations of the statute and regulations as it chooses once the unlawful call is initiated . . . ." He notes that courts are to construe remedial statutes liberally in favor of consumers to effectuate the purpose of the enacting legislative body. *Logan v. Davis*, 233 U.S. 613 (1914). Given, however, that the purpose of the regulations are to prevent repeat calls, Charvat's argument is unpersuasive. If a telemarketer violates any one of the provisions in making a repeat call, then it is liable for statutory damages. Thereby deterring repeat calls and giving effect to all the regulations.

Moreover, awarding damages for each violation would create a windfall for the Plaintiff, and compensate consumers far beyond Congress's intention. Congress set the penalties at a minimal value, "[r]eflecting the probability of actual damage to the customer or consumer. Because of the low dollar value of the penalty, legislators intended the suits to be brought in the low-cost and convenient setting of a small claims court." *The Telephone Consumer Protection Act and Its Burden on Small Business*, 28 Cap. Univ. L. Rev 223, 228 (1999). In its initial rule-making proposal, the FCC recognized that unsolicited sales calls generated $435,000,000,000 in 1990. *Worsham,* 772 A.2d at 873. Because so many customers find telephone solicitations beneficial, the FCC concluded that it was not in the public's interest to quash this industry with its regulations. *Id.* Therefore, following the Ohio courts and the legislative purpose, the Court will calculate TCPA § 227(c)(5) damages per-call, not per-violation.

### ii.  CSPA

Similarly, the parties dispute whether statutory damages under the CSPA should be calculated per-call or per-violation. As other courts have noted, the Ohio courts are split on this issue. *Crye v. Smolak*, 674 N.E. 2d. 779, 783-84 (1996). The majority of Ohio courts allow plaintiffs to recover for each individual violation of the CSPA "if there are separate rule violations caused by separate acts." *Id.* (citing *Keller v. Pride Chevrolet, Inc.*, No. 13536, 1988 Ohio App. LEXIS 4055 (Oct. 12, 1988) ). If the individual violations, however, are all part of one transaction or act resulting in the same injury, then the court will limit the plaintiff's recovery to $200 per act. *Id.*

For example, in *Crye*, a consumer sued his car repairman for violations of the CSPA because the repairman failed to: (1) give him a form with the estimated cost and details of the repairs; (2) disclose potential extra charges for disassembly, reassembly or partially completed work; and (3) honestly represent the status of the repairs on the car. *Id.* at 781-83. The Court awarded the plaintiff damages for each of these individual violations of CSPA because the defendant "engaged in three separate acts that violated three different and distinct rules" of the CSPA. *Id.* at 785. The plaintiff suffered distinct injuries from this conduct, as he did not have a copy of the estimate from which to challenge the repairman's work, he was charged extra money without his consent, and was unable to follow the repair-progress on his car, and thus was entitled to multiple damages. *See also*, *Keller*, 1988 Ohio. App. LEXIS at *4 (awarding $200 for each of two violations because each violation was "cause by separate act of the appellee.")

Though the *Crye* court awarded damages for each violation, it noted that its finding did not "preclude a court from finding that the facts are such that only one act occurred . . . or that two rules are so similar as applied to the facts such that only one violation is found." *Id.* at 784-

-11-

85.

Consistent with the rubric articulated in *Crye*, Ohio courts have consistently declared that if either multiple CSPA violations arise from the same act, or if several CSPA violations are so similar that only one violation can be found, the plaintiff is limited to one recovery, despite the existence of multiple violations. *See, e.g., Ryan*, 858 N.E. 2d at 856-57 (holding that the plaintiff could not collect multiple times for violations of two statutory sections that are both directed at preventing the same harm and arose from the same call); *Eckman v. Columbia Oldsmobile, Inc.*, 585 N.E. 2d 451, 452-53 (Ohio Ct. App. 1989) (holding that multiple awards of statutory damages was not justified because the separate CSPA violations involved in the couple's car purchase formed a single instance of actionable conduct that resulted in a single injury).

In *Couto v. Gibson*, for example, the court held that the plaintiff could only recovery one award of statutory damages "no matter how many violations are ultimately proven" because all the CSPA violations emanated from the same transaction, an automobile lease agreement. *Couto*, 1992 Ohio App. LEXIS at *38-39. The plaintiff's complaint enumerated eleven violations of the CSPA, including failure to lease a car as advertised, failure to install air conditioning as advertised, and other problems pursuant to the lease agreement, but the court rejected plaintiff's argument that it could recover statutory damages for each of those individual violations. *Id.* at *3-5.

Similarly, in this case, despite the number of alleged violations per telephone call, each group of violations was based on the same transaction -- a telephone call. The Plaintiff suffered one distinct injury from each call -- the unwanted contact from a telemarketer -- and thus, damages should be limited accordingly. As in *Couto*, this Court finds that "[t]he separate

violations in the instant case formed a single instance of actionable conduct resulting in a single injury" *id.* at *38, and the Court will similarly limit statutory damages under the CSPA to one recovery for each of the nine repeat telephone calls.

In sum, therefore, Charvat cannot recover under the TCPA or the CSPA for violations occurring during the First Call. For the subsequent nine telephone calls, Charvat can only recover statutory damages once per-call under both the TCPA and the CSPA. Thus, despite Charvat's 187 alleged causes of actions, his maximum possible recovery is for nine violations of the TCPA, and nine violations of the CSPA.

### B. Jurisdiction

After granting Defendant's Motion for Partial Summary Judgment, the Court no longer has subject matter jurisdiction over this case. The case was before the Court pursuant to diversity jurisdiction granted by 28 U.S.C. § 1332, because there is complete diversity between the parties, and the amount in controversy exceeded $75,000 in the aggregate. As explained above, there is no federal question jurisdiction under 28 U.S.C. § 1331 because Congress granted exclusive state court jurisdiction over TCPA claims. *Compoli*, 116 F. Supp. 2d 926, 928 (N.D. Ohio 2004).

Though neither party raised the issue of jurisdiction, the Court may dismiss a case *sua sponte* for lack of jurisdiction. *See Franchise Tax Bd. V. Construction Laborers Vacation Trust*, 463 U.S. 1 (1983); *Anusbigian v. Trugreen/Chemlawn, Inc.*, 72 F.3d 1253, 1254 (6th Cir. 1996). Following Defendant's successful Motion for Partial Summary Judgment, there is no longer a sufficient amount in controversy to meet the requirements of § 1332. Charvat, at most, can recover $1500 in treble statutory damages for violations of the TCPA for each of the nine calls

for a total of $13,500. For violations of the CSPA, Charvat can only recover $200 for each of the nine calls for a total of $1800. In total, the amount in controversy is $15,300 and, therefore, fails to meet the requirements for federal diversity jurisdiction. Pursuant to 28 U.S.C. § 1447(c), "if at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded [to state court]." As such, the Court dismisses this action for lack of jurisdiction

## V. CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant's Motion for Partial Summary Judgment. Because the action no longer meets the amount in controversy requirements, the Court **DISMISSES** the case for lack of jurisdiction.

**IT IS SO ORDERED.**

    s/Algenon L. Marbley
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT COURT**

**Dated: January 25, 2008**